UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In Re:   Thomson-Shore, Inc.,                    Case No. 19-44343-tjt
                                                 Chapter 11
         Debtor.                                 Judge Thomas J. Tucker
_____/

### ORDER (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING ON A SECURED, SUPERPRIORITY BASIS, AND (II) SCHEDULING A FINAL HEARING

Upon the emergency motion (Docket # 12, the "Motion") of Thomson-Shore Inc. ("Debtor"), seeking pursuant to section 105, 362, 363(c)(2), 364(c)(1), 364(c)(2) and 364(c)(3) of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rule 2002, 4001(c), and 9014 of the Federal Rules of Bankruptcy Procedure, and Rules 4001-2 and 9013-1 of the Local Bankruptcy Rules, the entry of an interim and final order: (I) authorizing the Debtor to obtain postpetition financing pursuant to a debtor-in-possession credit facility (as amended, supplemented or otherwise modified from time to time, the "DIP Loan Agreement") between the Debtor and CJK Group, Inc. ("DIP Lender") pursuant to which the Debtor is seeking authorization to borrow up to, in the aggregate, the principal amount of $500,000.00, which, together with all interest, fees and expenses due and payable under the DIP Loan Agreement (the "Obligations"), to be (A) secured by first priority senior secured liens on all property of the Debtor that is not otherwise subject to a lien pursuant to Section 364(c)(2), subject only to the Carve-Out (as defined below), (B) secured by best available junior liens pursuant to Section 364(c)(3) on all assets of the Debtor that are subject to (i) valid and perfected prepetition liens, (ii) Permitted Liens (as defined below), and (iii) the Carve-Out, and (C) granting the DIP Lender superpriority administrative claims in the Case pursuant to Section 364(c)(1) of the Bankruptcy Code, senior in right of

payment over any and all administrative expenses of the kinds specified in Sections 503(b) and 507(a) of the Bankruptcy Code or otherwise, subject only to Permitted Liens and the Carve-out, (II) scheduling a final hearing (the "Final Hearing") to consider entry of an order (the "Final Order") approving the relief requested in the Motion on a final basis, and (III) approving the form of notice with respect to the Final Hearing.

The Court having considered the Motion and exhibits attached thereto; submitted in support hereof; a hearing having been held on March 28, 2019 (the "Interim Hearing"); and upon the entire record made at the Interim Hearing; and after due deliberation and sufficient cause appearing therefore;

THE COURT FINDS AND CONCLUDES that:

(A)  On March 25, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief with this Court under Chapter 11 of the Bankruptcy Code, thereby commencing the Case.   The Debtor is continuing in possession of its property, and operating and managing its business as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(B)  This Court has jurisdiction over these proceedings and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

(C)  Telephone, email, facsimile, or overnight mail notice of the Interim Hearing and the entry of this Order has been provided to (i) the Office of the United States Trustee (the "U.S. Trustee"); (ii) the creditors holding the 20 largest unsecured claims against the Debtor (iii) counsel to the DIP Lender; (iv) known holders of prepetition liens against the Debtor's property; (v) any person who has filed a request

for notice in the above captioned case pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The requisite notice of the Motion and the relief requested thereby and this Order has been provided in accordance with Bankruptcy Rule 4001, which notice is sufficient for all purposes under the Bankruptcy Code, including, without limitations, sections 102(1) and 364 of the Bankruptcy Code, and no other notice need be provided for entry of this order.

(D) The relief requested by the Motion is necessary to avoid immediate and substantial harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Order.

(E) The Debtor does not have sufficient available resources of working capital and financing to carry on the operation of its business without the funding available under the DIP Loan Agreement. The Debtor has an immediate need to obtain financing form the DIP Lender in order to permit, among other things, the Debtor to pay employees and to continue its business operation in an orderly manner, maintain business relationships with vendors, suppliers, customers and to satisfy other working capital and operational needs.

(F) The Debtor is unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or pursuant to Sections 364(a) and 364(b) of the Bankruptcy Code. Financing on a post-petition basis is not available to the Debtor unless the Debtor grants: (i) the DIP Loan Lien (as defined below) under the DIP Loan Agreement, pursuant to Sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code, to secure the Obligations, and (ii) pursuant to Section 364(c)(1) of the Bankruptcy Code, the Superpriority claims in respect of the Obligations. The DIP Lender has indicated a willingness to make such loans and

advances and provide such other financial accommodations pursuant to the terms and conditions set forth in the DIP Loan Agreement. The Debtor is otherwise unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Agreement and in the absence of the DIP Loan Agreement will be forced to promptly terminate operations and their employees and liquidate.

(G) The DIP Loan Agreement has been negotiated in good faith and at arms-length by the Debtor, and the DIP Lender, and any credit extended and loans made to the Debtor pursuant to the DIP Loan Agreement used by the Debtor for the benefit of the Debtor shall be deemed to have been extended, issued, made, or used as the case may be, in good faith as required, and within the meaning of, Section 364(e) of the Bankruptcy Code.

(H) The terms of the DIP Loan Agreement and this Order are fair and reasonable, and reflect the Debtor's exercise of prudent business judgment consistent with the fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

(I) Entry of this Order is in the best interests of the Debtor's estate and creditors because its implementation, among other things, will allow for the Debtor to remain in business by providing for interim working capital which is necessary to sustain the operations of the Debtor's existing business and provide the appropriate care and safety to its customers, including their immediate payroll and other critical interim working capital needs. Absent the entry of this Order, the Debtor's estate would be immediately and irreparably harmed.

(J) Each of the foregoing findings by the Court will be deemed a finding of fact if and to the full extent that it makes and contains factual finding, and will be

deemed a concluding of law if an to the full extent that it makes and contains legal conclusions.

Based upon the foregoing findings and conclusions, and upon the record made by the Debtor before this Court at the hearing on the Motion, and good and sufficient cause appearing therefor,

IT IS ORDERED that:

1. The Motion is granted subject to the terms and conditions set forth in this Order.

2. All objections, if any, to the entry of this Order are resolved hereby.

3. The DIP Loan Agreement is approved in all respects and is incorporated into this Order by reference.

4. The Debtor is authorized and obligated to comply with and perform, and is bound by, all of the terms, conditions and waivers contained in the DIP Loan Agreement and this Order, and the Debtor is authorized, directed, and obligated to repay amounts borrowed, with interest, fees, and expenses, and any other allowed charges and amounts, to the DIP Lender in accordance with and subject to the terms and conditions set forth in the DIP Loan Agreement and this Order. None of any documents related to the DIP Loan Agreement, any provision thereof, any right arising under any thereof, shall be voidable or avoidable under section 548 of the Bankruptcy Code, under any applicable state Uniform Voidable Transaction Act or similar statue or common law, or otherwise. The Debtor is further authorized, obligated, and directed to fund each of the Debtor's professional's weekly allocated amount under the Budget in advance, which each professional will hold in trust for application to the professional's invoices when allowed by the Court. The Debtor is

expressly authorized and empowered to execute and deliver any other document of any kind required to be executed and delivered in connection with the DIP Facility.

5. The Debtors are expressly authorized to borrow from the DIP Lender, on the terms and subject to the conditions set forth in the DIP Loan Agreement and this Order, up to $500,000.00 in the aggregate after entry of a final order or after this Order becomes a final order, and up to $316,000.00 on an interim basis pending the Final Hearing. All such loans shall be advanced via wire transfer to the designated bank account of the Debtor pursuant to the wire transfer instructions to be provided by the Debtor to the DIP Lender.

6. The Debtor is authorized to use the proceeds of the DIP Loan Agreement for working capital needs and to pay operating costs and expenses of the Debtor for the period ending on the Termination Date of the DIP Facility in accordance with the DIP Loan Agreement and the budget attached to the DIP Loan Agreement.

7. Pursuant to Section 364(c)(1) of the Bankruptcy Code, all of the Obligations shall constitute allowed claims (the "Superpriority Claims") against the Debtor with priority over any and all administrative expenses and all other claims against the Debtor, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in section 503(b) and 507(b) of the Bankruptcy Code, which allowed claims shall be payable from and have recourse to all pre and post-petition property of the Debtor and all proceeds thereof, excluding Avoidance Actions (defined below) and all proceeds and recoveries from Avoidance Actions, subject in all cases only to the Permitted Liens, the Carve-Out to the extent specifically provided for herein and in the DIP Loan Agreement, and any similar superpriority claim under Section 364(c)(1) granted to Crestmark, a division of MetaBank, as successor to Crestmark Bank.

8. As security for the Obligations, the DIP Lender shall have and is hereby granted (effective upon the date of this Order and without the necessity of the execution by the Debtor of mortgages, security agreements, pledge agreements, financing statements or otherwise), valid and perfected security interests in, and liens (the "Liens"), on all currently owned or hereafter acquired property and assets of the Debtor of any kind and nature, whether real of personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all, proceeds, products, rents and profits thereof, including, without limitation, all cash, accounts, chattel paper, deposit accounts, documents, equipment, general intangibles, instruments, investment property, letters of credit rights, vehicles, goods, accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, intellectual property (including trademarks and trade names), licenses, cause of actions, right to payment including tax refund claims, insurance proceeds and tort claims and the proceeds, products, rents and profits of all of the foregoing ("DIP Loan Collateral"), including, without limitation, all cash or checks on hand, all cash or securities deposited into any account maintained by the Debtor and the proceeds of all causes of action (other than causes of action arising on or after the Petition Date under Sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code ("Avoidance Actions") and the proceeds and recoveries therefrom) with the following priorities.

(a) Pursuant to Section 364(c)(2) of the Bankruptcy Code, a first priority, perfected Lien upon all of the Debtor's right, title and interest in, to, and under the DIP Loan Collateral that is not otherwise encumbered by a valid, perfected and non-avoidable security interest or lien on the Petition Date;

7

(b) Pursuant to Section 364(c)(3) of the Bankruptcy Code, a best available junior, perfected Lien upon all of the Debtor's right, title, and interest in, to and under all DIP Loan Collateral subject only to a Permitted Lien. The foregoing Liens are referred to herein as the "DIP Loan Liens." Except to the extent expressly set forth in this Order, including the Carve-Out, the DIP Loan Liens granted pursuant to this Order and the DIP Loan Agreement to the DIP Lender to secure the Obligations shall not be subordinated. "Permitted Liens" means (a) liens for unpaid taxes that are not yet due and payable and that arise and are senior to the DIP Facility Liens by operation of law, (b) purchase money security interests and liens of lessors under capital leases, (c) easements, rights of way, covenants, conditions, zoning variances, and similar encumbrances that do not materially interfere with the use or value of the property subject thereto, (d) mechanic's materialmen's warehousemen's, or similar liens that arise and are senior to the DIP Loan Liens and prepetition liens by operation of law, and (e) liens and encumbrances that are valid, binding, enforceable, perfected and non-avoidable liens existing on the Petition Date.

9. The DIP Loan Liens shall be subject to a carve-out (the "Carve-Out") for the payment of (1) Court allowed and unpaid professional fees, expenses, and disbursements in amounts not to exceed the line items allocated to each professional under the Budget (in the aggregate, the "Professional Expense Cap"), and (2) the payment of fees pursuant to 28 U.S.C. § 1930, ("UST Fees"); provided, that so long as the Termination Date has not occurred, (i) the Debtor may borrow under the DIP Facility to fund each professional's weekly allocated amount under the Budget in advance, which each professional will hold in trust for application to the professional's invoices when allowed by the Court, and the Debtor will be permitted to pay allowed UST Fees as the same are due and payable in an amount not to exceed those set

forth in the Budget; and (ii) payments of professional fees and UST Fees shall not reduce the amount of the Carve-Out.   During the continuance of an Event of Default under the DIP Loan Agreement or a default under the Interim Order or the Final Order, as the case may be, any payments actually made to such professionals during such continuance shall reduce the Professional Expense Cap on a dollar-for-dollar basis.

10.   Upon entry of, and to the extent provided in the Final Order, neither the Debtor nor its estate may assert a claim under Section 506(c) of the Bankruptcy Code for any costs and expenses incurred in connection with the preservation, protection, or enhancement of, or realization by the DIP Lender upon the DIP Loan Collateral. The DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any DIP Loan Collateral.

11.   All DIP Loan Liens shall be valid, binding and perfected automatically upon the entry of this Order.   The DIP Lender shall not be required to file, or serve financing statements, mortgages, notice of lien, or similar instruments which otherwise may be required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect the DIP Loan Liens.   If, however, the DIP Lender in its reasonable discretion, shall determine to file any such financing statements, mortgages, agreements, notice of lien, or similar instruments, or to otherwise confirm perfection of the DIP Loan Liens, the Debtor, at the Debtor's expense to the extent provided for in the Budget, is hereby authorized, directed, and obligated to cooperate with and assist in such process to the extent provided in the DIP Loan Agreement or this Order, and all such documents shall be deemed to have been perfected at the time of and on the date of this Order, with the priorities set forth herein, and shall be and hereby are deemed and adjudicated senior to any other post-petition filing by any other person or entity with respect to the same collateral.

9

19-44343-tjt    Doc 57    Filed 03/29/19    Entered 03/29/19 16:29:37    Page 9 of 15

A certified copy of this Order may, at the discretion of the DIP Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of liens or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

12. Upon the occurrence of and during the continuance of an Event of Default under the DIP Loan Agreement, the DIP Lender is entitled to exercise rights and remedies and take all or any of the following actions without further relief from the automatic stay pursuant to Section 362(a) of the Bankruptcy Code or any other applicable stay or injunction or further order of or application to this Court: (a) terminate its obligation to make advances under the DIP Loan Agreement; (b) declare the principal of and accrued interest, fees, and other liabilities constituting the Obligations to be immediately due and payable; and/or (c) take any other action or exercise any other right or remedy permitted to the DIP Lender under the DIP Loan Agreement, this Order, or by operation of law; provided, however, that the DIP Lender may not exercise its rights under clause (c) without providing to counsel for the Debtor, counsel for any committee, and the US Trustee not less than five business days written notice of an expedited motion for relief from the automatic stay and the Debtor waives any right to assert any defense to such expedited motion for relief from the automatic stay other than the defense that no Event of Default under the DIP Loan Agreement has occurred or is continuing.

13. So long as the Debtor remains in control of the DIP Loan Collateral, (i) the DIP Lender shall not, in any way or manner, be liable or responsible for (A) the safekeeping of the DIP Loan Collateral, (B) any loss or damage thereto occurring or arising in any manner or fashion from any cause (C) any diminution in the value thereof, or (D) any act or default of any carrier, services, bailee, custodian, forwarding

agency, or other person, and (ii) all risk of loss, damage, or destruction of the DIP Loan Collateral shall be borne by the Debtor.

14. The Debtor is authorized and directed to perform all acts, and execute and comply with the terms of such other documents, instruments, and agreements in addition to the DIP Loan Agreement as the DIP Lender may reasonably require as evidence of and for the protection of the Obligations, or which otherwise may be deemed reasonably necessary by the DIP Lender to effectuate the terms and conditions of the DIP Loan Agreement or this Order.   The Debtor and the DIP Lender are hereby authorized to implement, in accordance with the terms of the DIP Loan Agreement, any amendments, waivers or modifications that are not materially adverse to the Debtor without further order of this Court; provided, however, that counsel to the Debtor's secured creditors, the U.S. Trustee and counsel to any committee shall receive reasonable advance notice of any such modification or amendments.   Any other amendments or modifications require the prior approval of this Court upon notice and hearing.

15. The Debtor is hereby required to afford representatives, agents, and/or employees of the DIP Lender access to the Debtor's premises, books, records and personnel (including officers and directors) in accordance with the DIP Loan Agreement, and shall cooperate, consult with, and provide to such persons all such information.

16. Having been found to be extending credit to the Debtor in good faith, based on the record before this Court, the DIP Lender shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code with respect to the Obligations and the DIP Loan Liens created, adjudicated, or authorized by this Order in the event that his Order or any finding, adjudication, or authorization contained herein is stayed,

vacated, reversed or modified on appeal. Any stay, modification, reversal, or vacation of this Order shall not affect the validity of any Obligations of the Debtor to the DIP Lender incurred by the Debtor pursuant hereto prior to the DIP Lender's actual receipt of written notice of the effective date of any such stay, modification reversal or vacation. Notwithstanding any such stay, modfication, reversal, or vacation, all financing extended to the Debtor pursuant to this Order and all Obligations incurred by the Debtor pursuant hereto prior to the DIP Lender's actual receipt of written notice of the effective date of any such stay, modification, reversal, or vacation shall be governed in all respects by the original provisions hereof, and the DIP Lender shall be entitled to all the rights, privileges and benefits, including, without limitation, the liens, security interest, and priorities granted herein with respect to all such Obligations.

17. The DIP Lender, or its assignee, shall have the right to credit bid all or any portion of the outstanding Obligations under the DIP Loan Agreement in any sale of the Debtor's assets. However, the exercise of any such right to credit bid, whether pursuant to Section 363(k) of the Bankruptcy Code, this Order, any other order of the Bankruptcy Court, or otherwise shall be conditioned upon the payment in cash in full to the holder of any valid and properly perfected Permitted Lien as defined in this Order.

18. The provisions of this Order and any actions taken pursuant hereto shall survive the entry of any order (a) confirming any plan of reorganization in the Case, (b) converting the Case to a Chapter 7 Case; or (c) dismissing the Case, and, to the greatest extent permitted by applicable law, the terms and provisions of this Order, as well as the Superpriority Claims and DIP Loan Liens granted pursuant to this Order, the DIP Loan Agreement, and related documents (as applicable) shall continue in full

force and effect notwithstanding the entry of any such order, and such Superpriority Claims and DIP Loan Liens shall maintain their priority as provided by this Order until all of the Obligations are indefeasibly paid in full in cash.

19. The DIP Lender is hereby relieved of the requirement to file proofs of claim or requests for payment of administrative expenses in the Case with respect to any Obligations.

20. Nothing in the Order, the DIP Loan Agreement, or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Lender of any liability for any claims arising from the prepetition or postpetition activities of the Debtor in the operation of its business, or in connection with its restructuring or sale efforts. The DIP Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as "responsible persons" or "owners or operators" and shall have no fiduciary duty with respect to the operation or management of the Debtor (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute.

21. The stay of this Order set forth in Bankruptcy Rule 6004 is hereby waived and this Order shall be effective immediately upon its entry.

22. To the fullest extent permitted by law, the provisions of this Order and the DIP Loan Agreement shall be binding upon and inure to the benefit of the parties thereto, and their respective successors and assigns.

23. This Order, the Motion, and the DIP Loan Agreement shall be construed together when possible. To the extent any provision of this Order directly conflicts

with any provision of the Motion or any provision of the DIP Loan Agreement, the provision of this Order shall control.

24. The Motion is hereby set for a final hearing on April 17, 2019 at 11:00 a.m. (the "<u>Final Hearing</u>") before Judge Thomas J. Tucker, United States Bankruptcy Court for the Eastern District of Michigan, Courtroom 1925, 211 West Fort Street, Detroit, MI 48226. Pending the final hearing, Debtor may borrow up to $316,000.00 from DIP Lender pursuant to the Budget, which is the amount necessary to avoid immediate and irreparable harm under Bankruptcy Rule 4001(c)(2). The Debtor shall, within 24 hours of entry of this Order, serve a copy of the Motion, including all attachments (unless previously served), and this Order, by regular mail upon: (i) the Office of the United States Trustee, (ii) the 20 largest unsecured creditors in this case, (iii) all Secured Creditors, (iv) any committee formed in this case, and (v) any other party which has filed a request with this Court for notice in the Debtor's case. Objections to this Order must be filed with the United States Bankruptcy Court for the Eastern District of Michigan within fourteen (14) days from the date of entry of this Order, except that an official committee may file an objection within fourteen (14) days after it is served with this Order. Objections shall be served on: (i) Scott M. Kwiatkowski, Goldstein, Bershad & Fried, P.C., counsel to the Debtor, 4000 Town Center, Suite 1200, Southfield, Michigan 48075; (ii) DIP Lender Attorney, Aaron J. Crandall, Gray Plant Mooty, 1010 W. Germain, Suite 500, Saint Cloud, MN 56301, and (iii) the Office of the United States Trustee. Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph. If an objection is timely filed, a Final Hearing will be held. If no objection is timely filed, this Order may become a final order without a hearing.

25. The Court shall retain jurisdiction to enforce this Order, and over any matters or disputes arising from or relating to the implementation of this Order.

**Signed on March 29, 2019**



/s/ Thomas J. Tucker
Thomas J. Tucker
United States Bankruptcy Judge